UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
RICHARDEEN L. AGARD,

                              Plaintiff,

                                                  MEMORANDUM & ORDER
             -against-                            10-CV-4726(JS)(GRB)

NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE; ANTHONY VANO, in his
Official Capacity and Individually;
ANNMARIE DWYER, in her Official Capacity
and Individually; GREGORY WILEY, in his
Official Capacity and Individually;
THOMAS VARGHESE, in his Official
Capacity and Individually; JOSEPH M.
MACCHIO, in his Official Capacity and
Individually; WILLIAM WELTHY, in his
Official Capacity and Individually;
RICHARD GAMBINO, in his Official
Capacity and Individually; BRIAN McCANN,
in his Official Capacity and
Individually; NONIE MANION, in her
Official Capacity and Individually; and
ELLEN MINDEL, in her Official Capacity
and Individually;

                              Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:        Colleen M. Meenan, Esq.
                      Meenan & Associates, LLC
                      64 Fulton Street, Suite 502
                      New York, NY 10038

For Defendants:       Ralph Pernick, Esq.
                      New York State Attorney General
                      200 Old Country Road, Suite 240
                      Mineola, NY 11501


SEYBERT, District Judge:

          Plaintiff  Richardeen  Agard  ("Plaintiff")  commenced

this  action  pro  se  on  October  14,  2010.   On  May  6,  2011,

Plaintiff filed her First Amended Complaint ("FAC"), asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the New York State Human Rights Law ("NYSHRL"), and 42 U.S.C. §§ 1983, 1985.  On June 30, 2011, Defendants moved to dismiss the FAC.  Plaintiff, now represented by counsel, filed an opposition to the motion to dismiss and cross-moved for leave to file a Second Amended Complaint ("SAC").  For the following reasons, Defendants' motion is GRANTED, and Plaintiff's motion is DENIED.

<u>BACKGROUND</u>

Plaintiff is a 54-year old African-American woman who suffers from a speech impediment and walks with a cane.  (FAC ¶¶ 17, 54-55.)  She began her employment with Defendant New York State Department of Taxation and Finance ("DTF") in April 2001 as a student intern.  (FAC ¶¶ 11-12, 18, 51; SAC ¶ 22.)  After interning with DTF for approximately eight months and scoring 100 on the entrance exam, she was hired as an auditor.  (FAC ¶¶ 12, 18, 51; SAC ¶ 22.)

Plaintiff asserts that beginning in 2005 her supervisor, Defendant William Welthy, began to harass her because he "was upset with [P]laintiff for talking to, or being associated with an employee that had a handicap or a disability"--Mateusz Nadolecki ("Nadolecki").  (FAC ¶ 56; see

2

also SAC ¶ 27.)[1]   DTF hired Nadolecki as an auditor in mid-2005 and assigned Plaintiff to train him.  (SAC ¶¶ 28-29.)   In December 2005, while Plaintiff was on vacation, she received a call from Nadolecki who stated that he had been fired after requesting an accommodation.  (FAC ¶ 61; SAC ¶ 36.)[2]  When she returned to work on or about December 14, 2005, Welthy was "very upset" with her for speaking to Nadolecki about his termination while she was on vacation.  (FAC ¶ 62; SAC ¶ 41.)   Welthy approached Plaintiff while she was having lunch with two other employees and stated:   "If you go against the State, you will get it right here," and he pointed his finger at her forehead.  (FAC ¶ 63; SAC ¶ 42.)   Plaintiff responded stating: "That is a threat, and you cannot threaten me."   (FAC ¶ 43; SAC ¶ 64.)  Welthy, who was walking out of the room at the time, turned around and said, "I am going to make sure that you will never become a supervisor."  (FAC ¶ 64; SAC ¶ 44.)   Plaintiff reported Welthy's threat to Defendant Gregory Wiley who laughed it off as a joke.  (FAC Ex. A; SAC ¶¶ 47-48.)

      In March 2006, Plaintiff was notified that she was going to be subpoenaed to testify on behalf of Nadolecki at a

---

[1] The SAC does not refer to Nadolecki as being disabled. Instead, it states that "he did not conform with male gender stereotypes in that he was effeminate and preferred to wear women's clothing."  (SAC ¶ 31.)

[2] The SAC asserts that Nadolecki requested that he be able to use the women's bathroom.  (SAC ¶ 36.)

hearing on a complaint he had filed with the Workers'
Compensation Board challenging the basis of his termination.
(FAC ¶ 110; SAC ¶ 53.)  Fearful that Welthy would make good on
his threats, Plaintiff contacted Michael Glannon from the Office
of Counsel to express her concerns and hopefully ensure that her
testimony in favor of Nadolecki would not negatively affect her
future at DTF.  (FAC ¶ 110; SAC ¶ 55.)  Glannon suggested that
Plaintiff prepare a written statement rather than testify.  (FAC
¶ 110.)

     Despite Glannon's suggestion, Plaintiff testified at
Nadolecki's Workers' Compensation hearing on July 26, 2006.
(FAC ¶ 72; SAC ¶ 57.)  She testified that she and Nadolecki
were close, often eating lunch together and taking breaks at the
same time.  (FAC Ex. G.)  She testified that prior to his
termination he did not have any problems with any of their co-
workers.  (FAC Ex. G.)  She also described Welthy's threat and
two other incidents involving Welthy:  on one occasion he told a
taxpayer that Plaintiff was the coffee-maker--that all she was
good for was making coffee--and on another occasion he told
Plaintiff that he hated her.  (FAC Ex. G.)  Finally, she
described how, after Nadolecki's termination, she started to
receive less favorable evaluations.  (FAC Ex. G.)[3]  DTF managers,

---

[3] During the hearing, Nadolecki stated that Plaintiff "was
discriminated against under section 120 [of the Workers'

Defendants Wiley, Anthony Vano, and Thomas Varghese, all attended the hearing and were noticeably upset when Plaintiff decided to sit with Nadolecki rather than with them. (SAC ¶¶ 59-62.)

Shortly after testifying, Plaintiff asserts that she was subjected to a variety of adverse actions in retaliation for supporting Nadolecki. First, in August 2006, Welthy failed to appear for a BCS hearing. (FAC ¶ 73; SAC ¶ 64.) A BCS hearing is conducted when a taxpayer challenges an audit assessment performed by a DTF auditor. Plaintiff had never attended a BCS hearing without a supervisor being present, as it was DTF's policy that the auditor's supervisor to attend. (SAC ¶¶ 65-67.) Upon returning to the office after the hearing, a different supervisor told her "that's what you get," in reference to Welthy's failure to appear. (SAC ¶ 68.) Then, Welthy intentionally refused to close Plaintiff's completed cases or assign her new ones. (FAC ¶ 101; SAC ¶ 69.) Plaintiff asserts that this negatively affected her performance evaluations because an auditor's productivity--which is measured in part by the number of cases he or she is able to close in a given period--is an integral part of an auditor's evaluation. (FAC ¶ 101; SAC ¶¶ 70-74.) She was also denied the opportunity to

Compensation Law] because she was a witness, and they tried to shut her up. Not only was I discriminated against, but she was too." (FAC Ex. G.)

participate in training programs and recruitment activities--
which she had attended regularly before testifying on behalf of
Nadolecki and which also would have enhanced her performance
evaluations. (SAC ¶¶ 75-84.)

In December 2006, she was interviewed by the DTF
Deputy Inspector General, Defendant Richard Gambino, regarding
Welthy's threats. (FAC ¶ 106; SAC ¶ 86.) Plaintiff felt that
Gambino's informal investigation was inadequate, and she never
received any update regarding the results of his investigation.
(FAC ¶¶ 107-08; SAC ¶¶ 88-89.)

Shortly thereafter in January 2007, Plaintiff was
transferred against her objections to a different team headed by
Defendant Brian McCann--a close friend of Welthy. (FAC ¶ 74;
SAC ¶¶ 94-95.) McCann, like Welthy, refused to close
Plaintiff's completed cases or assign her new ones. (FAC ¶¶
101, 109; SAC ¶¶ 99-100.) Plaintiff asserts that she was the
only auditor that was transferred to a different team. (SAC ¶
97.)

In May 2007, DTF announced that it was going to
conduct interviews for supervisory positions. (FAC ¶ 75; SAC ¶
103.) Plaintiff interviewed for one of the positions on
September 17, 2007, at 3:15PM.[4] (FAC ¶ 80; SAC ¶ 104.) She was

---

[4] Plaintiff asserts that the time is relevant because "by 3:15PM
State workers are already half way out of the door, since very

the last to be interviewed that day.  (FAC ¶ 80; SAC ¶ 104.) The interview team consisted of Defendants Wiley, Vano, Varghese, AnnMarie Dwyer, and Joseph Macchio.  (FAC ¶ 83; SAC ¶ 106.)   Although they were not part of the interview team, Plaintiff asserts that Welthy and McCann both provided negative assessments of Plaintiff's performance to ensure that she did not get the promotion.  (SAC ¶¶ 109-11.)   On October 2, 2007, Plaintiff learned that she was denied the promotion.  (FAC ¶ 86; SAC ¶ 114.)   The two individuals who were promoted were both white females below the age of fifty.  (FAC ¶ 94.)[5]

        At this point, Plaintiff's case load had dwindled so low as a result of McCann's failure to assign her new cases that Defendants and other DTF employees began to refer to her area of the office as the "stupid row."  (FAC ¶ 102; SAC ¶¶ 124-27.)

        In October and November 2007, Plaintiff began writing letters to the Equal Employment Opportunity Commission ("EEOC"), and on February 7, 2008 she formally filed a charge of discrimination ("EEOC Charge").  (FAC ¶ 100; SAC ¶ 120.)   On the "Charge of Discrimination" form, Plaintiff checked boxes indicating that she was reporting discrimination based on race,

---

little work if any gets done in the State offices after lunch time."  (FAC ¶ 85.)

[5] Plaintiff in her FAC asserts that DTF was purposefully trying to promote younger employees.  (FAC ¶¶ 75, 93.)   This fact does not appear in the SAC.

age, and "other,"[6] and stated that the discrimination began in December 2005 and continued through October 2, 2007. (Docket Entry 8-3.)   In a narrative attached to the form, Plaintiff describes being denied the promotion and asserts that it was because: (i) the promotions were reserved for younger employees; (ii) she was "single[d] out and threaten[ed] because [she] is an African American woman," and (iii) she testified against the state. (FAC Ex. A.)

Plaintiff asserts that the "pattern of discrimination"--specifically McCann's failure to close completed cases and assign new ones and Defendants' referring to her area as the "stupid row"--continued "unabated" after she filed the EEOC Charge. (SAC ¶ 121; see also FAC ¶ 101-02.) Plaintiff eventually emailed Wiley in the hopes that he would assist her in closing cases. (SAC ¶ 138.) McCann was allowing her cases to remain open for extended periods of time despite the expressed desire of those taxpayers to settle their claims and have their cases closed. (SAC ¶ 136.) However, Plaintiff's emails were never answered. (SAC ¶ 139.) So in late 2008, she emailed DTF's Field Audit Division and reported that McCann was not closing her cases in a timely manner. (FAC ¶ 113; SAC ¶ 140.) Plaintiff asserts that as a result of her email to the

---

[6] She did not check the "retaliation" box.

Field Audit Division, McCann reprimanded her with a counseling session and a written memo.  (FAC ¶ 113; SAC ¶ 141.)

"Isolated from her co-workers, left to sit in the 'stupid row' so as to be publicly humiliated with barely any assignment [sic] to work on," Plaintiff asserts that her work environment had become "so unbearable and intolerable by Defendants' continual retaliatory adverse actions against her that she was constructively discharged in February 2009, when she submitted her letter of resignation to end her employment with DTF."  (SAC ¶ 143; see also FAC ¶ 114.)

Plaintiff commenced the present action against DTF pro se on October 14, 2010.  On May 6, 2011, Plaintiff filed her FAC, naming Vano, Dwyer, Wiley, Varghese, Macchio, Welthy, Gambino, McCann, Nonie Manion, and Ellen Mindel as additional Defendants in their official and individual capacities.  The FAC contained eight cases of action:  (1) discrimination on the basis of race and hostile work environment in violation of Title VII; (2) discrimination on the basis of race and disability in violation of NYSHRL; (3) retaliation against Plaintiff for asserting her rights under Title VII; (4) retaliation against Plaintiff for asserting her rights under NYSHRL; (5) equal protection; (6) First Amendment retaliation; (7) waste; and (8) conspiracy to interfere with her civil rights in violation of 42 U.S.C. § 1985.

On July 5, 2011, Defendants moved to dismiss. On October 19, 2011, Plaintiff, now represented by counsel, filed her opposition. She seeks to withdraw her first, second, fifth, seventh, and eighth causes of action and all claims against Dwyer, Varghese, Macchio, Manion, and Mindel. She also seeks leave to file a SAC to amplify the remaining claims and to add additional claims for discrimination for Plaintiff's associating with Nadolecki in violation of Title VII and NYSHRL.

<u>DISCUSSION</u>

As a preliminary matter, since Defendant does not object, the first, second, fifth, seventh, and eighth causes of action and all claims against Dwyer, Varghese, Macchio, Manion, and Mindel are hereby DISMISSED. Thus, the only remaining claims in Plaintiff's FAC are (1) her Title VII retaliation claim, (2) her NYSHRL retaliation claim, and (3) her First Amendment retaliation claim.

The Court will first address Defendants' motion to dismiss as it pertains to these three claims. Then, the Court will address Plaintiff's motion to add Title VII and NYSHRL discrimination claims related to her association with Nadolecki.

I. <u>Motion to Dismiss First Amended Complaint</u>

   A. <u>Standard of Review</u>

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). To survive a Rule

12(b)(6) motion, a plaintiff must plead sufficient factual
allegations in the complaint to "state a claim [for] relief that
is plausible on its face." Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 949 (2007).
The complaint does not need "detailed factual allegations," but
it demands "more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do."
Id. at 555.  In addition, the facts pled in the complaint "must
be enough to raise a right to relief above the speculative
level." Id.  Determining whether a plaintiff has met her burden
is "a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense." Ashcroft v.
Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868
(2009); accord Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).
However, "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not
suffice." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S.
at 555).  The standard for motions made pursuant to Rule
12(b)(1) is "substantively identical" to those made under Rule
12(b)(6). Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d
Cir. 2003).

   B.  Title VII Retaliation

      Plaintiff asserts that she was retaliated against in
violation of Title VII for testifying on behalf of Nadolecki and

11

against DTF at Nadolecki's Workers' Compensation hearing. Defendants argue that this claim must be dismissed for three reasons: (1) because it is time-barred; (2) for failure to exhaust administrative remedies prior to commencing suit; and (3) for failure to state a claim. Because the Court finds that Plaintiff has failed to state a claim, it will not address the merits of Defendant's other two arguments.

To state a Title VII retaliation claim, "a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)). Defendants argue, inter alia, that Plaintiff has failed to plead that she participated in a protected activity--i.e., that Plaintiff's testimony at Mr. Nadolecki's Workers' Compensation hearing is not a "protected activity" under Title VII. The Court agrees.

New York's Workers' Compensation Law provides as follows:

> It shall be unlawful for any employer or his or her duly authorized agent to discharge or in any other manner discriminate against an employee as to his or her employment because such employee has claimed or attempted to

12

> claim compensation from such employer, or <u>because he or she has testified or is about to testify in a proceeding under this chapter</u> and no other valid reason is shown to exist for such action by the employer.

N.Y. WORKERS' COMP. LAW § 120.  Courts in the Second Circuit have held that the Workers' Compensation Law provides the <u>exclusive</u> remedy for an employee's claim that he or she was retaliated against for testifying at a Workers' Compensation hearing.  <u>See, e.g.</u>, <u>De la Cruz v. City of N.Y.</u>, 783 F. Supp. 2d 622, 646-47 (S.D.N.Y. 2011) (holding that court lacked jurisdiction to entertain an employee's retaliation claim under Title VII and the ADEA related to his threat to file a Workers' Compensation claim because the Workers' Compensation Law provides the exclusive remedy for such claims).  Thus, Plaintiff's activity here was protected <u>exclusively</u> by the Workers' Compensation Law, and not by Title VII.

Plaintiff argues that whether her activity was in fact protected by Title VII is irrelevant because to satisfy the first element of a Title VII retaliation claim, she need only have a good faith "reasonable belief that she was opposing an employment practice of DTF toward Nakolecki that violates Title VII." (Pl. Opp. 15.)  While Plaintiff's statement of the law is correct, <u>see</u> <u>Kessler v. Westchester Cnty. Dep't of Soc. Servs.</u>, 461 F.3d 199, 210 (2d Cir. 2006); <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 285 (2d Cir. 2001); <u>Manoharan v. Columbia Univ.</u>

13

Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988), and since retaliation for seeking Workers' Compensation is not cognizable under Title VII, Plaintiff's belief that she was opposing conduct that violates Title VII is not reasonable, see Manoharan, 842 F.2d at 594 (holding that a complaint directed at conduct outside the definition of unlawful employment practice under Title VII cannot support a claim for retaliation); Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 135-36 (2d Cir. 1999); Wallace v. N.Y. State Dep't of Corr. Servs., No. 02-CV-0308A, 2006 WL 2134644, at *9 (W.D.N.Y. July 28, 2006).   Accordingly, Plaintiff has failed to adequately plead that she engaged in a protected activity as required to state a claim for retaliation under Title VII, and her Title VII retaliation claim is hereby DISMISSED.

C.   NYSHRL Retaliation

Plaintiff also asserts that she was retaliated against in violation of NYSHRL for testifying on behalf of Nadolecki. Retaliation claims brought pursuant to the NYSHRL are analyzed under the same legal standard as claims brought under Title VII. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000).   Therefore, Plaintiff's NYSHRL retaliation claim is DISMISSED for the same reasons that Plaintiff's Title VII retaliation claim is dismissed.

D.   <u>First Amendment Retaliation</u>

Finally, the FAC asserts that Plaintiff was retaliated against in violation of the First Amendment for filing her EEOC Charge.   In order to state a claim for First Amendment retaliation, Plaintiff must plead and prove that: "(1) h[er] speech addressed a matter of public concern, (2) [s]he suffered an adverse employment decision, and (3) a causal connection exists between h[er] speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action." <u>Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.</u>, 444 F.3d 158, 162 (2d Cir. 2006) (citation omitted).   Defendants assert that Plaintiff has failed to adequately plead each element.   The Court will address each in turn.

1.   <u>Matter of Public Concern</u>

"Whether an employee's speech addresses a matter of public concern is a question for the court to decide, taking into account the content, form, and context of a given statement as revealed by the record as a whole." <u>Lewis v. Cowen</u>, 165 F.3d 154, 163 (2d Cir. 1999) (citing <u>Connick v. Myers</u>, 461 U.S. 138, 147-48 & n.7, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)).   When, as here, the basis for a First Amendment retaliation claim is commencing a lawsuit or an administrative proceeding, it is the subject of the lawsuit or administrative proceeding that must

15

touch on a matter of public concern.   See <u>Konits v. Valley Stream Cent. High Sch.</u>, 394 F.3d 121, 124 (2d Cir. 2005) (citing <u>Cobb v. Pozzi</u>, 363 F.3d 89, 102 (2d Cir. 2003)).

The speech forming the basis of Plaintiff's First Amendment retaliation claim is her EEOC Charge, which asserts that she was retaliated against for truthfully testifying against DTF at a Workers' Compensation hearing.   The Second Circuit has held that "[v]oluntarily appearing as a witness in a public proceeding or a lawsuit is a kind of speech that is protected by the First Amendment." <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 210 (2d Cir. 1995); <u>see</u> <u>also</u> <u>Konits</u>, 394 F.3d at 125 ("[S]peech is of particular public concern when it involves actual or potential testimony in court or in administrative procedures."); <u>Benedict v. Town of Newburgh</u>, 95 F. Supp. 2d 136, 143 (S.D.N.Y. 2000) (holding that "testifying truthfully is constitutionally protected from retaliation"); <u>Frisenda v. Inc. Vill. of Malverne</u>, 775 F. Supp. 2d 486, 510 (E.D.N.Y. 2011).   Thus, the Court finds that Plaintiff has adequately pled that her speech addressed a matter of public concern sufficient to withstand a motion to dismiss.[7]

---

[7] Plaintiff also appears to be arguing that her emails to DTF's Field Audit Division to report that her cases were not being closed in a timely manner is protected speech.   (Pl. Reply 3.) The Court disagrees.   "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the

2.   Adverse Employment Action

In the context of a First Amendment retaliation claim, "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks and citation omitted).   The Second Circuit has held that "[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); accord Zelnik, 464 F.3d at 226.   The list is not exhaustive, and "lesser actions may also be considered adverse employment actions." Morris, 196 F.3d at 110; see also Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) ("Our precedent allows a combination of seemingly minor

---

most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147.  Plaintiff's grievance here was purely personal: She felt that McCann's and Wiley's continued refusal to close her completed cases and assign her new ones "curtailed [her] career advancement." (SAC ¶ 123.)  And even though the taxpayers whose cases were assigned to Plaintiff may have been adversely affected, "retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.'" Ruotolo v. City of N.Y., 514 F.3d 184, 190 (2d Cir. 2008) (alteration in original) (quoting Ezekwo v. N.Y.C. Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991)).

17

incidents to form the basis of a constitutional retaliation claim once they reach a critical mass.").

Here, Plaintiff argues that Wiley's and McCann's refusal to close completed cases so she would not be assigned new ones is an adverse employment action because it "curtail[ed] [her] career advancement and negatively impact[ed] [her] performance evaluation and her reviews."[8]   (SAC ¶ 123.)   The Court agrees.   Courts in the Second Circuit have held that reductions in workload and inferior or less desirable assignments constitute adverse employment actions because they impact a plaintiff's opportunity for professional growth and career advancement.   See Nakis v. Potter, No. 01-CV-10047, 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) (collecting cases); see also Wright v. N.Y.C. Off-Track Betting Corp., No. 05-CV-9790, 2008 WL 762196, at *4 (S.D.N.Y. Mar. 24, 2008) (finding that being given "[c]omparatively poor assignments," such as menial as opposed to more substantive tasks, can constitute an adverse employment action); Neratko v. Frank, 31 F. Supp. 2d 270, 283 (W.D.N.Y. 1998) ("Allegations of inferior and less desirable work duties may constitute an adverse employment action.").   Accordingly, the Court finds that Plaintiff has adequately pled an adverse employment action.

---

[8] While the denial of a promotion would be considered an adverse employment action, Plaintiff was denied the promotion before she filed the EEOC Charge.

18

3.  <u>Causal Connection</u>

Finally, Defendants argue that Plaintiff has failed to establish a causal connection between Plaintiff's filing her EEOC Charge and the alleged adverse employment action. (Defs. Opp./Reply 14.)[9]  The Court agrees.

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." <u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir. 2009) (citing <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 59 (2001)).  While Plaintiff's EEOC Charge was closely followed by McCann's and Wiley's refusing to close her completed cases and assign new ones, Plaintiff asserts that these actions began in January 2007--well before she filed her EEOC Charge. (SAC ¶ 121 ("The pattern of retaliation against Agard continued unabated after Agard filed [the EEOC Charge] alleging retaliation.").) Courts in the Second Circuit have held that "mere continuation of an adverse employment condition initiated long before the protected activity in question does not, without more, logically support an inference that the protected activity prompted retaliation." <u>Washington v. City of N.Y.</u>, No. 05-CV-8884, 2009 WL 1585947, at *8 (S.D.N.Y. June 5, 2009); <u>see also Chamberlain</u>

---

[9] The Court notes that Plaintiff failed to address this argument in any of her papers.

v. Principi, 247 F. App'x 251, 254 (2d Cir. 2007) ("[W]here, as

here, 'timing is the only basis for a claim of retaliation, and

gradual adverse job actions began well before the plaintiff had

ever engaged in any protected activity, an adverse inference of

retaliation does not arise.'" (quoting Slattery v. Swiss Reins.

Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001)); Davis v. Oyster-Bay

E. Norwich Cent. Sch. Dist., No. 09-CV-1823, 2010 WL 3855237, at

*5 (E.D.N.Y. Sept. 28, 2010).

Thus, the Court finds that Plaintiff has failed to

adequately plead causation.   Accordingly, Plaintiff's First

Amendment retaliation claim is DISMISSED.[10]

## II.  Motion for Leave to File Second Amended Complaint

Also pending before the Court is Plaintiff's motion,

filed by counsel, for leave to file the SAC which (1) augments

Plaintiff's Title VII, NYSHRL, and First Amendment retaliation

claims and (2) adds Title VII and NYSHRL claims asserting that

---

[10] It is unclear whether Plaintiff is also asserting a Title VII
retaliation claim related to her filing the EEOC Charge.
(Compare Pl. Opp. 7-8 (discussing Plaintiff's filing the EEOC
Charge as "[an]other protect activit[y]" in support of her Title
VII retaliation claim), with Pl. Reply 3 (chart listing
Plaintiff's filing the EEOC Charge as protected speech in
support of her First Amendment claim only).  However,
Plaintiff's Title VII claim would fail for the same reasons as
her First Amendment claim failed.  See Lore v. City of Syracuse,
583 F. Supp. 2d 345, 382 (N.D.N.Y. 2008) (noting that the legal
standards for Title VII retaliation claims and First Amendment
retaliation claims are the same).

Plaintiff was discriminated against for associating with Nadolecki.

A.  <u>Standard of Review</u>

Courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See <u>Milanese v. Rust–Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2001). To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal</u>, 282 F.3d 83, 88 (2d Cir. 2002).

B.  <u>Title VII, NYSHRL, and First Amendment Retaliation Claims</u>

The Court has reviewed the retaliation claims as pled in the SAC and finds that they fail for the same reasons articulated above. Plaintiff failed to plead any additional facts that would change the Court's analysis. Therefore, to the extent that Plaintiff's motion seeks to replead the Title VII, NYSHRL, and First Amendment retaliation claims, the motion is DENIED.

C.    Title VII Discrimination Claim

        Defendants    argue    that    Plaintiff's    Title    VII
discrimination claim is futile for three reasons:  (1) because
it is time-barred; (2) for failure to exhaust administrative
remedies prior to commencing suit; and (3) for failure to state
a claim.  The Court will address each in turn.

        1.    Statute of Limitations

        A Title VII action is considered timely if Plaintiff:
(1)  filed  a  charge  with  the  EEOC  within  300  days  of  the
allegedly discriminatory act, (2) received an EEOC right-to-sue
letter, and (3) commenced suit within ninety days of receiving
the  right-to-sue  letter.    See  42  U.S.C.  §  2000e-5(e)-(f);  see
also  Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994);
Vishevnik v. Bd. of Educ. of N.Y.C., 145 F. App'x 708, 709 (2d
Cir.  2005)  (citing  42  U.S.C.  §  2000e-5(e)(1));  Tewksbury v.
Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999).  Here,
Plaintiff filed her EEOC Charge on February 7, 2008.  (SAC Ex.
A.)   This is within 300 days of DTF's decision not to promote
her; therefore, her EEOC Charge was timely.  Plaintiff received
a right-to-sue letter from the EEOC on August 5, 2010 (SAC Ex.
A) and commenced suit against DTF on October 14, 2010 (Docket
Entry 1).   However, Plaintiff did not assert this Title VII
discrimination claim until she moved to file her Second Amended

                              22

Complaint on October 19, 2011--well beyond the ninety days prescribed by statute.

This is not fatal, so long as the Title VII discrimination claim is deemed to "relate[] back" to the date of the original Complaint. FED. R. CIV. P. 15(c). Although this was not raised by Plaintiff (in fact, Plaintiff fails to address Defendant's statute of limitations defense in any of her briefs), even if this Court did find that the Title VII discrimination claim related back to the date of the original Complaint, the claim would nonetheless be dismissed for failure to exhaust administrative remedies.

2. Failure to Exhaust

Title VII requires that a plaintiff exhaust her administrative remedies before filing a civil action. Butts v. N.Y.C. Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. As a result, it is well-settled that a district court may only "hear Title VII claims that either are included in an EEOC charge or are based on conduct . . . which is 'reasonably related' to that alleged in the EEOC charge." Butts, 990 F.2d at 1401.[11]  The

_____

[11] Although the language in Butts suggests that the requirement that a Plaintiff exhaust his remedies with the EEOC is jurisdictional in nature, the Second Circuit has clarified that

Second Circuit has recognized three situations where claims "reasonably relate" to conduct included in an EEOC charge, only one of which is applicable here: where the claims in the civil action "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of the discrimination.'" Butts, 990 F.2d at 1402 (quoting Smith v. Am. President Lines, Ltd., 571 F.2d 102, 107 n.10 (2d Cir. 1978)).

To determine whether Plaintiff's discrimination claim based on her association with Nadolecki is reasonably related to the claims in her EEOC Charge, the Court must examine the factual allegations of discriminatory conduct contained in the Charge itself and determine "whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quoting Deravin v. Kerik, 335 F.3d 195, 202 (2d Cir. 2003)).

Plaintiff's EEOC Charge does not state that she was discriminated against for associating with a transgendered employee. In fact, it does not even mention that Nadolecki was effeminate, wore women's clothing, or generally did not conform to traditional male stereotypes, nor were these facts included

---

the requirement is simply a pre-condition to a federal suit. Francis v. City of N.Y., 235 F.3d 763, 768–69 (2d Cir. 2000).

in Plaintiff's original <u>pro</u> <u>se</u> Complaint or the FAC.   Rather,
Plaintiff argues that her "factual narrative, as set forth in
her EEOC filings . . . expressed that she was treated adversely
by her supervisors for testifying on behalf of her supervisor[,
and] [h]er claim of association is reasonably related to this
act."  (Pl. Opp. 11.)  Aside from the fact that such conclusory
statements are insufficient to defeat a motion to dismiss, <u>see</u>
<u>Iqbal</u>, 129 S. Ct. at 1949, Plaintiff's statement is legally
incorrect.   Courts in the Second Circuit have consistently held
that an EEOC charge limited to a claim of retaliation[12] "is not
likely to trigger an investigation of the underlying
discriminatory treatment of which the plaintiff complained."
<u>Dixit v. N.Y.C. Dep't of Gen. Servs.</u>, 972 F. Supp. 730, 734
(S.D.N.Y. 1997); <u>see also</u> <u>Roff v. Low Surgical & Med. Supply,
Inc.</u>, No. 03-CV-3655, 2004 WL 5544995, at *3 (E.D.N.Y. May 11,
2004) ("[C]omplaints of discriminatory conduct are generally not
exhausted by prior administrative claims alleging retaliation
for complaining of such treatment."); <u>Pustilnik v. Hynes</u>, No.
96-CV-3989, 1998 WL 813411, at *5 (E.D.N.Y. July 21, 1998).
This is because a victim of retaliation only has to show that

---

[12] While Plaintiff's EEOC Charge is not limited to her
retaliation claim, Plaintiff does not argue that the other
claims included in her Charge, namely her race, sex, and age
discrimination claims, are reasonably related to this Title VII
"association" claim.  Further, those claims have been
voluntarily dismissed by Plaintiff and are no longer the subject
of this lawsuit.

she was engaging in protected activity by making (or in Plaintiff's case, supporting) complaints of discrimination, not that the underlying complaints were actually meritorious. See Roff, 2004 WL 5544995, at *3; Pustilnik, 1998 WL 813411, at *5; Dixit, 972 F. Supp. at 734.

Accordingly, the Court finds that Plaintiff did not exhaust her administrative remedies prior to commencing suit. As such, Plaintiff's motion to amend the FAC to assert this claim is DENIED.

### 3.  Failure to State a Claim

Even if Plaintiff had exhausted her administrative remedies, the Court questions whether Plaintiff adequately stated a claim for relief.  Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff argues that Title VII extends to prohibit employers from discriminating against any employee for merely "associating with another employee who is in a protected category."  (Pl. Reply 7-8.) Although the Second Circuit recently recognized that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race," Holcomb v. Iona Coll., 521 F.3d 130, 132, 138 (2d

26

Cir. 2008) (emphasis added), its holding was limited to interracial associations. The Second Circuit explained: "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's own race." Id. at 139 (emphasis in original); see also, e.g., Rosenblatt v. Bivona & Cohen, P.C., 946 F. Supp. 298, 300 (S.D.N.Y. 1996) ("Plaintiff has alleged discrimination as a result of his marriage to a black woman. Had he been black, his marriage would not have been interracial. Therefore, inherent in his complaint is the assertion that he has suffered racial discrimination based on his own race.").[13] Such a rationale cannot be used to justify extending Title VII's reach to an employer's discrimination against an employee for associating with someone who does not conform to gender stereotypes. In other words, Plaintiff cannot, nor does she, argue that the alleged discrimination related in any way to her own sex.

However, the Court raises this issue without deciding it. Since Plaintiff failed to exhaust her administrative remedies with respect to this claim, the Court need not decide

---

[13] The three cases cited by Plaintiff, Chandler v. Fast Lane, Inc., 868 F. Supp. 1138, 1143-44 (E.D. Ark. 1994); Johnson v. Univ. of Cincinnati, 215 F.3d 561, 574 (6th Cir. 2000); Whitney v. Greater N.Y. Corp. of Seventh-Day Adventists, 401 F. Supp. 1363, 1366 (S.D.N.Y. 1975), similarly deal with discrimination arising out of an interracial relationship.

whether her theory is cognizable under Title VII.

    D.    <u>NYHRL Discrimination Claim</u>

        Under <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed in the litigation's "early stages." <u>See also</u> 28 U.S.C. § 1367(c)(3).  As discussed above, the Court has dismissed all of Plaintiffs' federal claims.  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL discrimination claim, and DENIES Plaintiff's motion to amend on that basis.  <u>See Carnegie-Mellon Univ.</u>, 484 U.S. at 350.

CONCLUSION

        For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's motion to amend is DENIED. The Clerk of the Court is directed to enter judgment in favor of Defendants and to mark this matter CLOSED.

        SO ORDERED.

        /s/ JOANNA SEYBERT_____
        Joanna Seybert, U.S.D.J.

Dated:    February   23  , 2012
        Central Islip, NY

28